UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAKISHA W. o/b/o ILL,   ) | |
| ) | |
| Plaintiff(s)   ) | |
| ) | |
| vs.   ) | Case No. 4:24-CV-1700 SRW |
| ) | |
| LELAND DUDEK,[1]   ) | |
| Commissioner of Social Security   ) | |
| Administration,   ) | |
| ) | |
| Defendant(s).   ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 20. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.    Factual and Procedural Background**

On June 21, 2022, Plaintiff Lakisha W. protectively filed an application for supplemental security income (SSI) on behalf of ILL, her minor child, pursuant to Title XVI, 42 U.S.C. §§

---

[1] At the time this case was filed, Carolyn W. Colvin was the Commissioner of Social Security. The Court later substituted Ms. Colvin with LeLand Dudek. ECF No. 14. Subsequetly, Frank Bisignano became the Commissioner of Social Security in May 2025. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Frank Bisignano for LeLand Dudek in this matter.

1381, *et seq*., with an alleged disability onset date of March 28, 2016. Tr. 17. The applications were denied upon initial consideration and reconsideration. Tr. 17, 48-49, 81. On February 24, 2023, a request for a hearing before an Administrative Law Judge ("ALJ") was timely filed. Tr. 17, 84.

Plaintiff appeared for a telephonic video hearing, with the assistance of counsel, on October 10, 2023. Tr. 29-41. The alleged disability onset date was amended to June 21, 2022. Tr. 17, 33, 149-54. Plaintiff testified about how ILL's disability affects his behavior in school. *Id*. At the time of the hearing, ILL was seven years of age and in second grade. Tr. 34-35. On January 25, 2024, the ALJ issued an unfavorable decision finding ILL not disabled. Tr. 17-24. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 144-45. On October 31, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony and ILL's medical and school records, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

Under the Social Security Act, an individual under the age of eighteen is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine

2

whether the child is engaged in substantial gainful activity. If yes, the claimant is not disabled. 20 C.F.R. § 416.924(a), (b); *see* 42 U.S.C. § 1382c(a)(3)(C)(ii). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has "an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a), (c). An impairment is not severe if it amounts only to "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). Third, if the claimant has a severe impairment, the Commissioner considers the degree of the impairment's medical severity. If the combined effect of all medically determinable impairments, even those that are not severe, meets or equals the severity of a listing, the claimant is considered disabled, so long as those impairments have lasted or are expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.924(d).

The Court must affirm the Commissioner's decision so long as "the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The Court will not "reverse merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would

3

have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (internal quotation marks and citation omitted).

### III.   The ALJ's Decision

Applying the foregoing three-step analysis, the ALJ found ILL was born on March 22, 2016; was a school-age child on June 21, 2022, the date the SSI application was filed; was a school-age child at the time of the decision; and did not engage in any substantial gainful activity since the application date. Tr. 18. ILL has the severe impairment of "attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD) and/or other specified depressive disorder, and mild intermittent asthma." *Id.* He does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18-19. He also does not have an impairment or combination of impairments that functionally equals the severity of the listings in 20 CFR 416.924(d) and 416.926a. Tr. 20-23. The ALJ concluded ILL has not been under a disability, as defined in the Social Security Act, since the date the application was filed. Tr. 24.

### IV.   Discussion

Plaintiff presents one assignment of error, arguing the "ALJ failed to properly evaluate functional equivalence" because substantial evidence shows ILL has "an extreme limitation in the domain of interacting and relating with others; at least a marked limitation in the domain of caring for oneself; and a marked limitation in the domain of attending and completing tasks." ECF No. 18 at 1.

At the third step, if the impairment(s) meets or medically equals a Listing, the child is disabled. *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment

4

functionally equals the listings. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).

To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation in one domain of functioning or "marked" limitations in two domains. 20 C.F.R. § 416.926a(a). The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains used by the Commissioner in making this determination are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. *Id.*

A child-claimant has a "'marked' limitation in a domain when [his] impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities. [His] day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a child-claimant's functioning may be marked or extreme, the Commissioner is to review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining a child-claimant's functioning, the Commissioner looks "at how appropriately,

5

effectively and independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

Here, the ALJ determined ILL to have the following degrees of limitation in each of the six domains of functioning:

- <u>less than a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;
- <u>a marked</u> limitation in interacting and relating with others;
- <u>no</u> limitation in moving about and manipulating objects;
- <u>less than a marked</u> limitation in the ability to care for himself; and
- <u>no</u> limitation in health and physical well-being.

Tr. 20. Plaintiff agrees with the ALJ's conclusions regarding ILL's health and physical well-being, moving about and manipulating objects, and acquiring and using information. ECF No. 18 at 14. Because only three of the six domains are at issue, the Court will limit its discussion to those in dispute.

### A. Domain of Interacting and Relating with Others

Plaintiff argues the ALJ should have found that ILL has an extreme limitation in the domain of interacting and relating with others. The ALJ found ILL has a marked limitation. In making this determination, he wrote:

> The claimant has been suspended multiple times for violent behavior towards others at school and on the school bus. At his psychological evaluation, the claimant frequently interrupted others. [Tr. 270-74]. The claimant's teacher reported the claimant as having obvious problems expressing anger appropriately, handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in his mood, and using appropriate coping skills to meet the daily demands of the school environment. [Tr. 189-93]. The claimant often does not remain seated on the school bus, uses obscene language, and is abusive towards the driver. [Tr. 241]. The claimant's mother reported to the claimant's primary care physician that the claimant slapped another student, throws things, and has had multiple suspensions. [Tr. 253]. At a March 30, 2023, primary care visit that in part assessed the impact of an increased medication dosage on the claimant's behavior, the mother reported the claimant had been doing well since his last appointment and the provider noted the claimant was "[w]ell controlled on current medication." [Tr. 299].

6

Tr. 21.

Plaintiff contends she is not asking the Court to improperly reweigh the evidence already considered by the ALJ. Rather, she argues the ALJ should not have relied on the March 30, 2023 treatment note, which indicated ILL was "well controlled" on medication, because it was not supported by substantial evidence. To reenforce her argument, Plaintiff cites to post-March 30th records that evidence ILL's extreme behavior in relating and interacting with others.

For example, Plaintiff points to an April 11, 2023 note from his first-grade teacher who indicated ILL "hits his classmates out of anger" and shows aggression when he does not get his way. Tr. 290. The following day, on April 12, 2023, ILL was suspended because he "hit a student and continued to hit him." Tr. 291. The school nurse wrote a letter suggesting that he should see an "outside therapist that can go a bit further than the school-based therapist." Tr. 289. The nurse explained ILL had issues controlling his anger, was short-tempered, and aggressive at times. *Id.* She indicated he understands the steps necessary to manage his anger and de-escalate, but he refuses to follow them. *Id.* Due to these issues, he is intermittently removed from class for timeouts and sometimes has to stay out of class for the entire day. *Id.*

On April 20, 2023, ILL's mother received a written letter from the school indicating that ILL was being suspended for fighting another student. Tr. 288. On September 29, 2023, ILL's bus driver completed a Student Safety Referral Report indicating ILL was fighting on the bus and refusing to remain seated. Tr. 243. The driver described ILL as defiant and indicated he continued to stand in the aisle and on seats, jump over seats, and hang out of the window despite being told to stop. *Id.* On October 17, 2023, ILL was prohibited from utilizing the school's bus service for two days for "fighting / scuffling on the bus," refusing to remain seated, and "using obscene language or gestures." Tr. 241. The bus driver expressed concern for the safety of other

7

students on the bus as he "continue[s] to put them at risk." Tr. 242. He expressed difficulty communicating with ILL because he refuses to listen and follow directions. *Id.*

Notably, the ALJ did not address the April 11, April 12, April 20, and September 29, 2023 school records in the determination. The only 2023 records the ALJ cited was the March 30th treatment note stating ILL was "well controlled" on medication and the October 17th bus suspension letter. Despite the Commissioner's argument that the ALJ addressed the April 12 and April 20, 2023 records, *see* ECF No. 20 at 4, there is no citation to either of these records in the determination, *see* Tr. 17-24. Although "an ALJ is not required to discuss every piece of evidence submitted," *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010), she may not "pick and choose only evidence in the record buttressing [her] conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (8th Cir. 2004). The ALJ "must address the probative evidence and explain the reasons for rejecting it." *Hickman v. Berryhill*, 2018 WL 3589072, at *3 (W.D. Mo. July 26, 2018).

Here, it appears ILL may have experienced a decline in ADHD-attributed behavior shortly after the March 30, 2023 medication follow-up. The 2023 school records call into question whether ILL's impairment was actually "well controlled on medication" as he subsequently caused regular disturbances with his classmates, teachers, and bus drivers resulting in removal from the classroom and suspensions. Thus, substantial evidence does not support the ALJ's conclusion regarding his limitation in interacting and relating with others. "Because it is not clear from the decision whether the ALJ considered the totality of the evidence which could have supported a finding of disability, reversal is required to address this omission." *Lynette J. v. Dudek*, 2025 WL 521803, at *4 (E.D. Mo. Feb. 18, 2025).

B.      **Domain of Caring for Oneself**

Plaintiff argues the ALJ should have found that ILL has at least a marked impairment in the domain of caring for oneself. The ALJ found ILL has a less than marked limitation. In making this determination, she wrote:

> The mother reports the claimant has no issues caring for his personal needs [Tr. 168]. The mother, however, also reports the claimant does dangerous things like jumping off the top bunkbed [Tr. 253]. The claimant's teacher reported the claimant as having only slight problems for his physical needs and cooperating in, or being responsible for, taking needed medications [Tr. 193].

Tr. 22.

In the domain of caring for oneself, the Commissioner is to consider how well the child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways; how he copes with stress and changes in his environment; how he regulates his feelings and urges, and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). Limited functioning can be shown in this domain by continual placement of non-nutritive or inedible objects in the mouth; by engaging in self-injurious behavior, such as self-inflicted injury; by ignoring safety rules; and by experiencing disturbance in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3); *Garrett ex rel. Moore v. Barnart*, 366 F.3d 643, 652 (8th Cir. 2004).

ILL is defined as a "school-age" child as he is between 6 to 12 years old. Within this age range, the Regulations indicate:

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to

9

>avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv).

      In evaluating the domain of caring for oneself, the ALJ appeared to primarily consider the ability of ILL to care for his physical needs, such as maintaining his hygiene and taking medications. Although the ALJ acknowledged that ILL "does dangerous things like jumping off the top bunkbed," Tr. 22, the analysis regarding this domain is silent as to the many documented deficiencies ILL has in caring for his emotional needs. The record reflects ILL's frequent inability to control and avoid negative and unsafe behavior. ILL's school nurse affirmed that he had issues regulating his anger and applying de-escalation techniques. Tr. 289. Due to these issues, he was intermittently removed from class, sometimes for the entire day. *Id.* ILL fought fellow students on more than one occasion, resulting in a suspension and prohibition from utilizing school bus services. Tr. 243, 288. His bus driver expressed concern for the safety of other students on the bus as he "put them at risk" because of his behavior. Tr. 242.

      Further, in the same record the ALJ used to support "only slight problems for his physical needs and cooperating in, or being responsible for, taking needed medications," the remainder of the document indicated ILL had an "obvious" and "daily" problem with handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood (e.g., calming self), and using appropriate coping skills to meet daily demands of school environment. Tr. 193. And, while the ALJ was correct in stating that the Function Report ILL's mother completed did not note any issues related to maintenance of his personal needs, Tr. 22, 168, elsewhere she expressed concern with his inability to regulate his emotions, including suppressing behavior that could injure himself and others. Tr. 36, 167, 253.

10

Thus, substantial evidence does not support the ALJ's conclusion regarding ILL's limitation in caring for himself. Because it is not clear from the decision whether the ALJ considered ILL's emotional needs as a factor in assessing the domain of caring for himself, as required by 20 CFR § 416.926a(k), reversal is required to address this omission. *See Lynette J.*, 2025 WL 521803, at *4.

C.     **Domain of Attending and Completing Tasks**

Plaintiff argues the ALJ should have found that ILL has a marked impairment in the domain of attending and completing tasks. The ALJ found ILL has a less than marked limitation. In making this determination, she wrote:

> At the consultative examination, the claimant demonstrated an ability to follow simple commands and requests, though he required multiple reminders and redirection [Tr. 270]. The claimant was also frequently out of his seat during the examination, fidgety, and tried to start tasks before the instructions were complete [*Id.*]. The claimant's mother reported the claimant does not finish what he starts and does not complete chores most of the time [Tr. 169].

Tr. 22. The ALJ additionally noted that at a March 30, 2023 primary care visit, his mother reported ILL had been doing well since his last appointment and the provider noted he was "[w]ell controlled on current medication." Tr. 23 (citing Tr. 299).

The ALJ acknowledged that the Commissioner's medical consultants, Dr. Margaret Sullivan, Ph.D. and Dr. Paul Midden, Ph.D., opined that ILL has a marked impairment in this domain. However, the ALJ determined that their findings were "not supported by a reasoned analysis by the doctors." Tr. 23. The ALJ explained:

> Dr. Sullivan, for example, noted the claimant's teacher gave ratings of "no problems and a slight problem on tasks" yet still found a marked limitation in attending and completing tasks [Tr. 44].
>
> . . .
>
> Dr. Midden's opinion lacks support in finding a marked limitation in attending to and completing tasks in that [] he noted the claimant's teacher gave the claimant

11

> ratings of no or slight problems in completing tasks, yet gave no meaningful analysis as to why the opinion of the teacher, who interacts regularly with the claimant and is in a better position to assess the claimant's behavior than Dr. Midden, was not considered in his marked limitation finding [Tr 52].

Tr. 23.

"When considering the attending and completing tasks domain, the inquiry focuses on how well the child is able to focus and maintain his or her attention and how well the child begins, carries through, and finishes activities." *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) (citing 20 C.F.R. § 416.926a(h)). A school-age child should be able to focus his attention on a variety of situations, to concentrate on details, to change activities or routines without distracting himself or others, to stay on task, and to complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv) (A school-age child should also be able to follow directions, remember and organize school materials, complete assignments, and sustain attention well enough to participate in group sports, read independently, and complete family chores). *See also* Social Security Ruling 09–4p, *Title XVI: Determining Childhood Disability—The Functional Equivalence Domain of "Attending and Completing Tasks,"* 2009 WL 396033 (Feb. 18, 2009) (The inquiry also includes consideration of the child's alertness and ability to focus on an activity or task despite distractions, to perform tasks at an appropriate pace, to change focus after completing a task, and to avoid impulsive thinking and acting).

The following are examples of limited functioning in the domain of attending and completing tasks:

> (i) [He was] easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> (ii) [He was] slow to focus on, or fail to complete activities of interest to [him], e.g., games or art projects.
>
> (iii) [He was] repeatedly bec[a]me sidetracked from [his] activities or [he] frequently interrupt[ed] others.

12

>   (iv) [He was] easily frustrated and g[a]ve up on tasks, including ones [he is] capable of completing.
>
>   (v) [He] require[d] extra supervision to keep [him] engaged in an activity.

20 C.F.R. § 416.926a(h)(3). These examples "do not necessarily describe a 'marked' or 'extreme' limitation." *Id.*

The Court finds the ALJ did not perform a proper analysis of this domain. As discussed above, the inquiry focuses on how well the child is able to focus and maintain his or her attention and how well the child begins, carries through, and finishes activities. Drs. Sullivan and Midden found it relevant in determining a marked limitation that during ILL's September 1, 2022 psychological examination "he was frequently out of his seat, fidgety, frequently interrupted others, blurting out answers, and attempted to start tasks before instructions were completed. He frequently interrupted to ask questions that were not on task." Tr. 44, 52, 270. The examiner noted ILL's attention and concentration were impaired, and he was easily distracted and inattentive. *Id.*

While the ALJ focused on the Teacher's Questionnaire reflecting "ratings of no or slight problems in completing tasks" to find Drs. Sullivan and Midden's opinion unpersuasive as to this domain, the ALJ fails to discuss the teacher's qualification of her ratings. Importantly the teacher wrote: "This student has been sat in close proximity to teacher's desk. He has been moved to different seating areas to combat and hinder behavior within the classroom. Student was given comforting tools to reduce stress and classroom outbursts." Tr. 270. Drs. Sullivan and Midden explicitly considered this caveat to the teacher's ratings; the ALJ did not. Further, the Court continues to find concern with the ALJ's reliance on the March 30th treatment note indicating his behavior was "well controlled on medication" because the ALJ did not address the

13

subsequent April 11, April 12, April 20, and September 29, 2023 school records, suggesting that his symptoms were anything other than "well controlled."

Thus, substantial evidence does not support the ALJ's conclusion regarding his limitation in attending and completing tasks. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Frank Bisignano for Leland Dudek in the court record of this case.

So Ordered this 21st day of August, 2025.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

14